UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEOPLETECH GROUP INC,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al.,

Defendants.

CASE NO. C19-1959 MJP

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's motion for summary judgment, (Dkt. No. 31) and Defendants' cross-motion for summary judgment, (Dkt. No. 36). Having considered the motions, the opposition and reply briefs, (Dkt. Nos. 37, 40), and the Certified Administrative Record, (Dkt. No. 30), the Court DENIES Plaintiff's motion and GRANTS Defendants' motion.

**Background**

Plaintiff is challenging a decision by U.S. Citizenship and Immigration Services (USCIS) to deny its petition for a work visa for a prospective noncitizen employee. The Court has jurisdiction under 28 U.S.C. § 1331 because this case arises under the Administrative Procedure Act and the Immigration and Nationality Act. The parties move for summary judgment on

whether the agency's denial of the petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Plaintiff filed a petition to USCIS to sponsor Kalyan Achanta for a work visa for professionals with an advanced degree, commonly referred to as an EB-2 visa. See 8 U.S.C. § 1153(b)(2). Plaintiff offered Mr. Achanta, an Indian national with a master's degree in computer science from the City University of New York, a position as a computer information systems manager. (Dkt. No. 21 ¶¶ 1–2.) The process of securing a visa involves three steps: (1) the employer must obtain a labor certification from the Department of Labor; (2) the employer may then petition USCIS to classify the beneficiary as an EB-2 professional; and then, if the petition is successful, (3) the beneficiary may seek lawful permanent residency.

To gain approval of the petition before USCIS, the employer must prove three things: (1) it has a valid labor certification; (2) it can pay the offered wage; and (3) the offer is bona fide. USCIS is charged with investigating the facts underlying each petition and determining whether they are true. 8 U.S.C. § 1154(b). Plaintiff has the burden of proof before the agency. 8 U.S.C. § 1361.

Plaintiff filed this petition in December 2018. (Dkt. No. 30, Administrative Record (in citations hereinafter as "AR") at 1.[1]) USCIS denied the petition after invalidating the labor certification for material misrepresentation. Specifically, USCIS found Plaintiff did not disclose that the beneficiary is the brother-in-law of the company's president. Plaintiff filed this lawsuit to challenge that decision. (See Dkt. No. 1, Complaint.) After a partial settlement, USCIS agreed to reinstate the labor certification, reopen and reconsider the petition, and consent to

[1] Page numbers of the Administrative Record correspond to the page numbers listed at the bottom of each page of the Administrative Record, rather than ECF page numbers.

Plaintiff filing an amended complaint if the petition were denied. (See Dkt. No. 21, Amended Complaint.) For this reason, the validity of the labor certification is not at issue, and the denial was based on the other two elements (ability to pay and bona fide offer).

At that point, USCIS issued a request for evidence, dated May 22, 2020. (AR at 14–27.) Plaintiff submitted a response, dated October 14, 2020. (AR at 28–1463.) USCIS denied the petition on January 8, 2021, and Plaintiff filed the Amended Complaint. (AR at 1–26.)

## Discussion

### I. Whether USCIS's Denial of Plaintiff's Petition Is Supported by Substantial Evidence

#### A. Standard of Review

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governs which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

The Administrative Procedure Act provides for judicial review of agency actions and a remedy if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review is generally limited to the administrative record. Goffney v. Becerra, 995 F.3d 737, 747–48 (9th Cir. 2021). The arbitrary and capricious standard is a narrow one under which the Court cannot substitute its judgment for the agency's. F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513–14 (2009). The touchstone is whether the agency demonstrated "reasoned decisionmaking":

> An agency must "examine the relevant data and articulate a satisfactory explanation for its action." "Normally, an agency rule would be arbitrary and

> capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

E. Bay Sanctuary Covenant v. Garland, 994 F.3d 962, 981–82 (9th Cir. 2020) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43–44 (1983)) (internal citations omitted).

In short, the agency's action must be upheld if it is supported by substantial evidence. Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1310 (9th Cir. 1984). This means that USCIS's decision will be upheld if there are any grounds to support the result, while Plaintiff must show there are no grounds to support the denial of the petition. Tucson Herpetological Soc. v. Salazar, 566 F.3d 870, 880 (9th Cir. 2009) ("We will . . . sustain an agency decision resting on several independent grounds if any of those grounds validly supports the result, unless there is reason to believe the combined force of these otherwise independent grounds influenced the outcome.").

**B. Ability to Pay the Proffered Wage**

There was substantial evidence for USCIS to conclude Plaintiff failed to demonstrate its ability to pay the proffered wage from the priority date to the present day for two main reasons. First, Plaintiff did not submit sufficient financial information for USCIS to conclude that it had the present ability to pay. In particular, it did not submit its tax returns or any other financial information for 2019 and did not provide a good reason why. It also did not submit financial information for 2020, even though its response was not due until October 16, 2020. Second, a review of other petitions Plaintiff has submitted to USCIS raised enough questions about its ability to pay that USCIS could conclude Plaintiff did not meet its burden.

Showing ability to pay the proffered wage is an essential element of Plaintiff's burden before the agency:

> Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage. In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

8 C.F.R. § 204.5(g)(2).

The employer must show ability to pay through each stage of the process: from the priority date through the petition process and "until the beneficiary obtains lawful permanent residence." The priority date is "the date the labor certification application was accepted for processing by any office of the Department of Labor." 8 C.F.R. § 204.5(d). Here, that date is October 21, 2010. (AR at 2.) The petition under consideration was filed December 26, 2018, and Plaintiff's response to USCIS's request for evidence was due October 16, 2020.

The agency is empowered and obligated to investigate the facts underlying the petition and determine whether they are true. The Immigration and Nationality Act provides this authority to the Attorney General, who has delegated it to the Department of Homeland Security, of which USCIS is part. See 8 U.S.C. § 1103(a)(1); 8 C.F.R. § 2.1. The statute provides:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) or 1153(b)(3) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made . . . is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State.

8 U.S.C. § 1154(b). The regulation specifies what kinds of evidence the agency will consider and also makes clear that the agency may request whatever evidence is necessary to determine ability to pay. 8 C.F.R. § 204.5(g).

The two kinds of evidence the agency considers most relevant here are net income and net assets. It summarized Plaintiff's evidence on these categories as follows:

| **Year** | **Net Income** | **Net Current Assets** |
|---|---|---|
| 2010 | $30,255 | $987,839 |
| 2011 | –$1,015 | $203,214 |
| 2012 | $408,817 | $845,256 |
| 2013 | $457,984 | $3,912,734 |
| 2014 | $693,011 | $5,930,292 |
| 2015 | $1,059,129 | $2,961,088 |
| 2016 | $812,684 | –$3,770,230 |
| 2017 | $670,432 | –$4,638,193 |
| 2018 | $3,732,179 | $1,440,021 |
| 2019 | Not provided | Not provided |
| 2020 | Not provided | Not provided |

(AR at 3–4.) USCIS found that, based solely on these numbers, Plaintiff showed it could pay the proffered wage of $94,307 from 2010 to 2018. (Id. at 4.) But it ultimately concluded Plaintiff did not meet its burden for two reasons. First, Plaintiff did not provide evidence showing a present ability to pay (2019–2020). Second, a review of other approved petitions revealed that Plaintiff had not in fact paid the proffered wage after approval in many cases and that, if it had, it would not have been able to show continuing ability to pay the wage of the petition here.

*1. Failure to provide financial information for 2019 and 2020.*

USCIS faulted Plaintiff for not providing its 2019 tax returns or any other financial information for 2019 or 2020 and determined that Plaintiff did not meet its burden to show present ability to pay. (AR at 5.) This portion of the agency's decision is supported by applicable regulations and the record.

The regulation requires the employer to show ability to pay through each stage of the process. 8 C.F.R. § 204.5(g)(2) ("The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence."); see also id. § 103.2(b) ("An applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication."). In addition, the regulation specifically identifies tax returns as one of the required documents to submit. Id. § 204.5(g)(2) ("Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.").

Plaintiff's argument that it could not have submitted 2019 tax returns without prejudicing its response to USCIS is not persuasive. The request for evidence was issued May 22, 2020. (AR at 14.) Plaintiff's response was due August 17, 2020. (Id.) USCIS extended all deadlines by 60 days due to the Covid-19 pandemic. (See AR at 5 & 44.) This made Plaintiff's response due October 16, 2020. The deadline for federal tax returns was extended to October 15, 2020. (See AR at 444.)

Plaintiff believes the extended deadline for federal filing supports its argument that it could not submit its taxes to USCIS in time. That does not add up. Plaintiff has the burden of proof before the agency. 8 U.S.C. § 1361. Even accepting the argument, Plaintiff could have submitted other recent supporting information. The agency may be more forgiving about gaps in ability to pay in earlier years if the present ability to pay were undisputed. See Taiyang Foods Inc. v. U.S. Citizenship & Immigr. Servs., No. C10-0109 JLR, 2010 WL 3732193, at *3–4 (W.D. Wash. Sept. 20, 2010), aff'd, 444 F. App'x 115 (9th Cir. 2011) (discussing In re matter of Sonegawa, 12 I. & N. Dec. 612 (BIA 1967), in which agency held employer could establish

ability to pay by showing reasonable expectation of future profits in exceptional cases). In any case, it is well established that the employer must show ability to pay through the present. E.g., id. at *1.

Plaintiff has since filed its 2019 tax return and asks the Court to consider it. (See Dkt. No. 31, Ex. C.) The Court may consider evidence outside the administrative record only in "limited circumstances that are narrowly construed and applied." Goffney v. Becerra, 995 F.3d 737, 747–48 (9th Cir. 2021), cert. denied, 2021 WL 5763131 (U.S., Dec. 06, 2021) (internal quotation marks omitted). Such circumstances include when the agency has relied on documents not in the record or when a plaintiff makes a showing of agency bad faith. Id. at 748.

Plaintiff's argument here is different and does not track the case law. It argues it was arbitrary and capricious for USCIS to insist that they submit the 2019 return and that, instead, USCIS should have issued a second request for evidence to obtain it. This argument is not persuasive for several reasons: USCIS lacks discretion to extend the time to respond to a request for evidence, 8 C.F.R. § 103.2(b)(8)(iv); there is no requirement for USCIS to make additional requests for evidence as Plaintiff suggests; and this is Plaintiff's fifth petition for this beneficiary, which was itself previously denied and then reopened for adjudication. For these reasons, it would be difficult to conclude that declining to grant an extension or issue another request for evidence was contrary to law.

*2. Ability to pay wage of other petitions.*

USCIS also found Plaintiff did not demonstrate ability to pay based on a review of other petitions Plaintiff has submitted. USCIS's decision states that an employer must show ability to pay the wage of not only the instant petition but all pending petitions it has before the agency:

> In reviewing the information above, the petitioner's net income or net current assets for most years would be sufficient to pay the offered wage of $94,307. However, as discussed in the [request for evidence], where a petitioner has filed

> multiple petitions for multiple beneficiaries, the petitioner must produce evidence that its job offers to all beneficiaries are realistic, and therefore that it has had the ability to pay the proffered wages to each of the beneficiaries of its pending petitions, as of the priority date of each petition and continuing until the beneficiary of each petition obtains lawful permanent residence.

(AR at 4 (citing Matter of Great Wall, 16 I&N Dec. 142, 144–45 (Acting Reg. Comm. 1977); 8 C.F.R. § 204.5(g)(2); and Patel v. Johnson, 2 F. Supp. 3d 108, 124 (D. Mass. 2014).)

In its request for evidence, USCIS asked Plaintiff to provide information about its other pending I-140 petitions so that it could assess ability to pay. (AR at 21–22.) Plaintiff provided a spreadsheet listing about 123 petitions. (AR at 5; see id. at 446–48.) Plaintiff also provided w-2 forms issued to other beneficiaries. The spreadsheet showed almost all of the petitions were withdrawn in 2020, after USCIS had issued the request for evidence. (AR at 446–48.) Plaintiff represented that it was now only pursuing 18 petitions, all of which had been approved except for the instant one.

However, USCIS reviewed its own records and found a number of discrepancies. Its records showed Plaintiff had closer to 150 petitions. (AR at 5.) It also turned up petitions for beneficiaries with priority dates between 2009 and 2012 that had been approved, some of which did not appear on Plaintiff's spreadsheet or were listed as withdrawn. (Compare AR at 12–13 with AR at 446–48.) USCIS compared the proffered wage for each of these beneficiaries to what Plaintiff actually paid and found a gap of more than $1,000,000 for the four years in which Plaintiff showed net income and net assets of less than that amount, 2011, 2012, 2016, and 2017. (AR at 12–13.) In other words, if Plaintiff had actually paid the proffered wage to these beneficiaries after the petitions had been approved, it would not have had enough cash flow to pay the proffered wage of the instant petition. But to obtain a labor certification, the employer must certify that "the offered wage equals or exceeds the prevailing wage," "the wage the

employer will pay . . . will equal or exceed the prevailing wage," and that it "has enough funds available to pay the wage or salary offered." 20 C.F.R. § 656.10(c)(1), (3).

Plaintiff correctly points out that there is a lack of support for some of the language USCIS uses to describe the employer's obligation on this point. (See AR at 4.) Defendants state that USCIS has consistently required sponsors to show ability to pay all pending petitions but only one of the cases it cites involved a review of an employer's other visa petitions. See Patel v. Johnson, 2 F. Supp. 3d 108, 124 (D. Mass. 2014). Even in that case, the court found multiple independent bases for upholding the denial, so the fact that USCIS found the employer also could not pay all other beneficiaries was not dispositive. See id. at 123–24.[2]

None of the cases Defendants cite stand for the proposition that an employer must prove ability to pay all pending petitions for a single one to be approved. See Matter of Great Wall, 16 I&N Dec. 142, 144–45 (Acting Reg. Comm. 1977) (no other petitions discussed); Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1307 (9th Cir. 1984) (upholding agency decision to revoke two visas because company did not have ability to pay wages; no other petitions discussed); Econo Inn Corp. v. Rosenberg, 145 F. Supp. 3d 708, 716 (E.D. Mich. 2015) (considered wages paid to other employees but no other petitions discussed); Taco Especial v. Napolitano, 696 F. Supp. 2d 873, 880–81 (E.D. Mich. 2010) (no other petitions discussed); Taiyang Foods Inc. v. U.S. Citizenship & Immigr. Servs., No. C10-0109 JLR, 2010 WL 3732193, at *3–4 (W.D. Wash. Sept. 20, 2010) (same). It is true that the employer has that burden for each individual petition, but USCIS is not considering whether to approve or deny all pending petitions at this time.

---

[2] The court in Patel also described USCIS's reasoning on this point as "thin," but deferred to agency interpretation under Auer v. Robbins, 519 U.S. 452 (1997). Patel, 2 F.Supp.3d at 122 n.15. But see Kisor v. Wilkie, 139 S. Ct. 2400 (2019) (affirming Auer but clarifying standard under which courts must defer to agency interpretations of ambiguous regulations).

The facts USCIS relied on, however, show there is a reasoned basis for the denial on a narrower and more nuanced ground than what Plaintiff describes. USCIS considered whether Plaintiff had in fact paid the proffered wage to other beneficiaries after petitions were approved. (AR at 5–6, 12–13.) This is relevant to considering whether an employer has demonstrated ability to pay the proffered wage for an individual petition because the employer is representing that it can and will pay that wage. The regulation supports this reasoning. It requires the employer to provide evidence demonstrating it has the ability to pay the proffered wage from the priority date all the way through lawful permanent residence. 8 C.F.R. § 204.5(g)(2). Ability to pay is a broad term that reasonably encompasses pay to other employees. See Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1309 (9th Cir. 1984) ("determination of a petitioning employer's financial viability" showing ability to pay is made by USCIS).

The regulation also permits USCIS to request more evidence, including those relating to pay and personnel. See 8 C.F.R. § 204.5(g)(2) ("In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by [USCIS].") See also River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 117 (1st Cir. 2009) ("There is no question that the [USCIS Administrative Appeals Office] has discretion to decide how to weigh relevant evidence in assessing a prospective employer's ability to pay a proffered wage"). Finally, USCIS's conclusion is supported by the statute, which requires the agency to investigate the facts of the petition and determine whether they are true. 8 U.S.C. § 1154(b). It was Plaintiff's obligation to explain any discrepancies to USCIS and show that it had the continuing ability to pay.

Given Plaintiff's failure to provide evidence of its continuing ability to pay through the present and its failure to rebut USCIS's conclusion that it did not in fact pay the proffered wage

to employees after their petitions were approved, there is substantial evidence in the record to support USCIS's denial on this basis alone.

**C. Bona Fide Offer**

USCIS also denied the petition on the ground that Plaintiff did not establish the offer was bona fide. (AR at 6–10.) USCIS provided several independent bases for its decision. First, Plaintiff provided insufficient evidence to establish the job offer was bona fide in the proposed location at the time it applied for the labor certification. Second, when Plaintiff sought a labor certification for this position, it also sought labor certifications for other positions, the combined wages of which exceeded the company's net income or net assets at the time. Third, the beneficiary's strong ties to Pennsylvania undercut his attestation that he would relocate to the Seattle metropolitan area. Fourth, and finally, Plaintiff's apparent preference for hiring family members, including the beneficiary here, cast doubt on its certification that the position was genuinely open to U.S. workers.

Before a company can file a petition to USCIS, it must first seek a certification from the Department of Labor that there are insufficient U.S. workers available for the position where it is based and that hiring a noncitizen will not adversely affect the wages of U.S. workers. 8 U.S.C. § 1182(a)(5)(A)(i). When applying for the certification, the employer must certify that a number of facts are true, including:

> The offered wage equals or exceeds the prevailing wage . . . and the wage the employer will pay . . . will equal or exceed the prevailing wage . . . ;
>
> The employer has enough funds available to pay the wage or salary offered the alien . . . ; and
>
> The job opportunity has been and is clearly open to any U.S. worker.

20 C.F.R. § 656.10(c)(1), (3) & (8).

Plaintiff argues that, unlike "ability to pay," which is expressly identified as a requirement in the regulation discussed above, there is no legal basis for USCIS to deny a petition based on the conclusion that the position offered is not bona fide. USCIS has authority to determine whether the labor certification is valid and to invalidate it for fraud or willful misrepresentation. 20 C.F.R. § 656.30 ("after issuance, a labor certification is subject to invalidation by the DHS . . . upon a determination, made in accordance with those agencies' procedures or by a court, of fraud or willful misrepresentation of a material fact involving the labor certification application."). See Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1309 (9th Cir. 1984). The Ninth Circuit has noted that DOL's function in making the labor certification "is limited to making findings about conditions in the domestic labor market," and that USCIS is charged with case-specific fact-finding. K.R.K. Irvine, Inc. v. Landon, 699 F.2d 1006, 1009 (9th Cir. 1983).

Plaintiff points to that regulation as limiting USCIS's authority to enforcing against fraud or willful misrepresentation and that its hands are tied if it does not invalidate the labor certification. But, in addition to that regulatory authority, the INA empowers and directs USCIS to investigate the facts underlying the petition and determine whether they are true. 8 U.S.C. § 1154(b). Finally, it is the burden of the employer to show eligibility for the visa from the date of application through adjudication. 8 C.F.R. § 103.2(b). For these reasons, Plaintiff has not shown that the only grounds USCIS can rely on to deny a petition are ability to pay, 8 C.F.R. § 204.5(g)(2), or fraud and willful misrepresentation, 20 C.F.R. § 656.30.

*1. Insufficient evidence of work location at time of labor certification.*

USCIS found there was insufficient evidence to conclude Plaintiff could actually employ the beneficiary at the proposed worksite location listed in the application for the labor certification. (AR at 6–8.) In particular, the address Plaintiff listed in the form submitted to

DOL was no longer active at the time the form was submitted. (AR at 8.) While Plaintiff provided information about office locations around that time, it did not provide any evidence of what kind of business activities were being conducted at the addresses provided, so USCIS was unable to determine whether the locations were used as actual worksites or as unoccupied business or mailing addresses.

Plaintiff argues it is unreasonable to require it to submit decade-old documentation. In support, Plaintiff cites the DOL regulation requiring employers to keep records for five years from the date of filing for audit. See 20 C.F.R. § 656.10(f). But, again, Plaintiff has the burden of proof before the agency. 8 U.S.C. § 1361. In addition, this is not Plaintiff's first petition for this beneficiary using this labor certification. This is its fifth. It filed two others in 2011 and two in 2012 and 2014. (AR at 16–21.) Plaintiff has not been waiting a decade for its chance to file. While the Court would give more weight to evidence relating to the current proposed office location than to one from 2010–11, USCIS has provided a legal and factual basis for this conclusion which Plaintiff has not shown is contrary to the record.

*2. Insufficient evidence of ability to pay proffered wage at time of labor certification.*

USCIS also questioned whether there was a bona fide position available when the priority date was established. (AR at 8.) It noted that Plaintiff filed eleven petitions with priority dates from the year 2010 and that the combined proffered wages of those petitions was $1.4 million, which exceeded Plaintiff's net income ($30,255) and net assets ($987,839) at the time. (AR at 8–9.) This finding cast doubt on Plaintiff's attestation that it had funds available to pay the proffered wages. See 20 C.F.R. § 656.10(c)(3). This issue goes to USCIS's mandate to determine whether the facts underlying a petition are true, not whether Plaintiff has shown ability to pay the proffered wage, but Plaintiff did not address this issue separately.

*3. Insufficient evidence the beneficiary will relocate if approved.*

USCIS was not convinced that the beneficiary would relocate to the position's proposed location in the greater Seattle area. (AR at 9.) USCIS noted that the beneficiary and his wife have owned a home in Pennsylvania since 2010; that Plaintiff had employed the beneficiary from 2011–15 without the need to relocate; and that the beneficiary's wife, who is also the sister of the company's owner and a beneficiary of a separate petition Plaintiff filed, was employed by Plaintiff from 2015–19, without the need to relocate. Notably, the petition for the beneficiary's wife was approved, her lawful permanent residence application is pending, and she is one of the few beneficiaries to whom Plaintiff has paid the proffered wage after approval. (See AR at 12.)

The beneficiary, Mr. Achanta, submitted an affidavit in which he stated that he would relocate to accept the position and emphasized his family connections to the Seattle area. (AR at 77–78.) While the Court may not read the facts the same way as USCIS—accepting a permanent position that carries with it a path to legal permanent residency is a good enough reason to relocate—the standard of review requires only that the agency provide a reasoned basis for its decision. USCIS considered Mr. Achanta's sworn statement that he would move for the position but did not give it substantial weight in light of the other facts indicating strong ties to Pennsylvania and his and his wife's history of working for PeopleTech from that location.

*4. Insufficient evidence the position was open to U.S. workers.*

Finally, USCIS found that Plaintiff's initial failure to disclose the familial relationship between Plaintiff's owner and the beneficiary on the labor certification application and apparent preference for hiring family members raised questions about whether the "job opportunity has been and is clearly open to any U.S. worker." See 20 C.F.R. § 656.10(c)(8). Of the 18 petitions Plaintiff states it is actively pursuing, three are for family members of the company's owner: his brother-in-law (the beneficiary); his sister (the beneficiary's wife); and his cousin. (AR at 10.)

USCIS also noted Plaintiff failed to disclose familial relationships in its petitions for the owner's sister and cousin. (AR at 10.) While the existence of a familial relationship alone may not be a sufficient basis to deny a petition, at least one court has found failure to disclose it is, because it closes off a line of investigation to ensure the position is "clearly open to any U.S. worker." Diamond Miami Corp. v. United States Citizenship & Immigr. Servs., 2019 WL 4954807, at *3 (S.D. Fla. Oct. 8, 2019).

***

In sum, the Court finds there is at least one ground to uphold USCIS's decision—in particular, Plaintiff's failure to submit its 2019 tax returns, or similar financial information showing present ability to pay. USCIS has provided a reasoned basis for its denial and Plaintiff has not shown the decision is unsupported by substantial evidence. Therefore, the Court finds the decision was not arbitrary, capricious, or contrary to law. Plaintiff's motion for summary judgment is DENIED. Defendants' cross-motion is GRANTED and this proceeding is DISMISSED.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 11, 2022.

Marsha J. Pechman
United States Senior District Judge